1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**
9              **EASTERN DISTRICT OF CALIFORNIA**
10

11   RYAN JAMES JOHNSON,                  )   Case No. 1:15-cv-01395-DAD-SAB (PC)
                                          )
12              Plaintiff,                )
                                          )   FINDINGS AND RECOMMENDATION
13       v.                               )   RECOMMENDING DEFENDANTS' MOTION
                                          )   TO DISMISS BE DENIED
14   M. TORRES, et al.,                   )
                                          )   [ECF Nos. 12, 15, 16]
15              Defendants.               )
                                          )
16   _____)

17          Plaintiff Ryan James Johnson is appearing pro se and in forma pauperis in this civil rights

18   action pursuant to 42 U.S.C. § 1983.  Plaintiff consented to United States magistrate judge jurisdiction

19   on December 9, 2015.  (ECF No. 9.)  Defendants declined United States magistrate judge jurisdiction,

20   therefore, this action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

21   Rule 302.  (ECF No. 13.)

22          Currently before the Court is Defendants' motion to dismiss, filed February 9, 2016.

23                                          **I.**

24                              **RELEVANT BACKGROUND**

25          This action is proceeding against Defendants M. Torres and C. Sekula for violation of

26   Plaintiff's right to physical safety under the Eighth Amendment of the United States Constitution.

27          On February 9, 2016, Defendants filed a motion to dismiss the complaint for failure to state a

28   cognizable claim for relief or in the alternative for qualified immunity.  (ECF No. 12.)  Plaintiff filed

                                            1

an opposition on February 25, 2016, and Defendants filed a reply on March 3, 2016.  (ECF Nos. 15, 16.)

## II.

## DISCUSSION

### A.   Motion to Dismiss Standard

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted).  In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

Defendants argue that the Court should dismiss Plaintiff's complaint because (1) Plaintiff fails to state a cognizable claim against either Defendant; (2) Plaintiff has not constitutional right to a grievance hearing; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff's claim is barred by the holdings in Heck v. Humphrey and Edwards v. Balisok.

2

### B.    Complaint Allegations[1]

In August 2005, Plaintiff suffered a fractured clavicle bone as a result of a sports injury.  As a result, Plaintiff retains a sharp, fully-fractured clavicle bone in his right shoulder region.

The left interior portion of this bone visibly protrudes, underneath the skin, from out of his right shoulder.  The right exterior portion of this bone, sharply hued from diagonal fracture, remains floating within his muscle mass and tendons.  As a result, repetitive lateral and orbital movements cause the right exterior bone to stab into his muscle mass, causing Plaintiff debilitating and significant pain.  This injury has been deemed a permanent disability by administrative health staff at the California Department of Corrections and Rehabilitation.  The disability does not, however, render Plaintiff incapable of lateral or rotated movement, but when subjected to such actions, the pain commences.

In October 2011, a CDCR 7410 Comprehensive Accommodation Chrono was rendered and physical limitations to work assignments was issued which included no pushing, no pulling, and no lifting more than twenty pounds with his right shoulder.

On April 17, 2014, after a two-week initial processing, Plaintiff was assigned to a dining hall position in E-Facility at California Substance Abuse and Treatment Facility, at Corcoran (SATF). During the initial job processing, Defendant Torres presented Plaintiff without various documents for his signature regarding the terms and conditions of his job assignment in the dining hall.  Torres did not provide Plaintiff with a CDCR job description with itemized duties.  Plaintiff had doubts as to his ability to adequately perform his duties without experiencing pain.  Plaintiff explained his disability to Torres and belief that he would not be able to perform the dining hall duties without experiencing severe pain.  Torres scoffed at Plaintiff's concerns and ignored them.  At approximately 2:30 p.m., Torres instructed Plaintiff to report to the food service line.

Plaintiff reported to work and took a place in line, where he was required to scoop more than a thousand portions of food onto plastic trays for ninety minutes without an opportunity for rest.  During the ninety minute shift, Plaintiff could feel the jagged point of his fractured clavicle grinding against

---

[1] This case proceeds on Plaintiff's original complaint, and the statement of facts is based entirely on the allegations of Plaintiff's complaint.

the interior muscles causing severe pain.  Plaintiff advised Torres that the repetitive action was causing him pain but Torres ordered Plaintiff to continue with food service and suggested that Plaintiff try his left arm instead.

After the last tray was served, Plaintiff approached Torres and explained that his job duties caused him pain and that he needed to be re-assigned to a new job.  Torres stated that it was not within his authority to re-assign Plaintiff and then assigned Plaintiff to wet mop the dining hall.  Plaintiff informed Torres that mopping the floor would cause him further pain but Torres refused to accommodate him.  After Plaintiff finished mopping the floor, he approached Torres for reassignment.  Torres stated that he did not believe Plaintiff was in severe pain and told Plaintiff he was capable of performing the tasks.  Plaintiff re-iterated that he was capable, but that the repetitive motions caused him pain.  Torres stated that the only relief he could provide to Plaintiff was a new assignment in the dining hall which would be more painful for Plaintiff in comparison to his food service line work

From April 17, 2014 through April 25, 2014, Plaintiff continued to report to the dining hall for work.  Despite Plaintiff asking to be reassigned, Torres refused to submit the proper paperwork.  On April 22, 2014, Plaintiff's primary care physician, Dr. Kokor, evaluated him and determined that Plaintiff had significant physical limitations to his job assignment.  Dr. Kokor issued a CDCR 7410 Comprehensive Accommodation Chrono specifying that Plaintiff was not allowed to lift more than twenty pounds and was not allowed to engage in repetitive motions with his right arm or shoulder.

On April 28, 2014, Plaintiff received a copy of the chrono and presented it to Torres when he reported for duty.  Instead of accommodating Plaintiff, Torres instructed him to continue with the same painful work routine.  Plaintiff filed a CDCR Form 602 appeal.  Within thirty days, Plaintiff received an interview with CCII Fisher which included a conference call with Torres about providing Plaintiff with a reasonable accommodation.  Fisher explained to Torres that he must reasonably accommodate Plaintiff with a job assignment that is consistent with his physical limitations.  Fisher further explained to Torres that if there were no positions which would accommodate Plaintiff, then he would need to issue a CDCR 128B-1 Chrono and refer Plaintiff back to the Classification Committee.  Torres acknowledged the instructions and stated he would accommodate Plaintiff.  Torres made these

4

statements despite the prior statement that there were no positions available in the dining hall that did not involve repetitive motion of his arms.

When Plaintiff reported to his assignment in the dining hall, Torres determined he was no longer fit to serve food on the tray line.  Instead, Plaintiff was reassigned to "table wiper" and Plaintiff would still be required to sweep or mop the dining hall floor each evening.  Plaintiff immediately complained that his new duties were more strenuous than his original food service duties and asked Torres to submit a CDCR 128 to refer him back to the Classification Committee.  Torres refused, and Plaintiff was forced to continue working under extreme pain for several months.

On September 12, 2014, Torres presented Plaintiff with a five-month belated job description form.  This document was required to be presented to and signed by Plaintiff at the inception of his position.  The document specified the duties he was required to perform in his position.  Plaintiff immediately noticed the document had been pre-signed and back-dated by Torres to fraudulently reflect the inception date of his employment (4-17-14) rather than the true date of 9-12-14.  Torres committed forgery to protect himself from this lawsuit.

When Plaintiff questioned Torres about the attempted forgery, Torres became agitated and verbally aggressive stating, "I'm tired of your shit, I know you['re] not disabled, you['re] a fucking liar."  He further stated, "I don't believe you are physically unable to perform your agreed duties" and "you can do everything on this job description."  He then instructed Plaintiff to get out of his office and not return until the document was signed.

Instead of signing the original, Plaintiff made a copy of the original forgery, and retained the original and provided Torres with a signed copy in fear he would be subject him to further verbal abuse.

On September 15, 2014, Plaintiff provided Torres the signed copy.  Torres then became "retaliatory and vindictive."  Torres told Plaintiff he would be required to adhere to all duties, even those he had previously been removed to accommodate Plaintiff's disability.  This retaliatory measure was apparently because Plaintiff had given him a hard time about signing the job description form.  Torres also required that Plaintiff report for job duty four hours earlier each day.  Plaintiff was left no choice but to quit the job.

5

Plaintiff was issued a Rules Violation Report (RVR) for inadequate performance.  On September 16, 2014, Torres instructed Plaintiff to return to work despite Plaintiff's assertions that he quit his job.  Plaintiff reported for his assignment and explained to Torres that his disability was not being accommodated and he would no longer perform the painful work.  Torres subsequently issued a second RVR for Plaintiff's refusal to report for his work assignment.

On September 16, 2014, Plaintiff submitted a staff complaint against Torres for the fraud he committed.  Plaintiff also submitted a CDCR Form 22 request for interview to CCII Fisher explaining that Torres committed forgery and was not providing an accommodation as required.

On September 17, 2014, Plaintiff wrote the CDCR Office of Internal Affairs and explained the fraud committed by Torres.  Plaintiff never received a response.  On this same date, Plaintiff submitted a CDCR Form 7362 Health Care Services Request Form explaining that every task at his job assignment was contrary to the Accommodation Chrono he received.  Plaintiff requested a consultation to specify which tasks were and were not repetitive.  Medical staff refused to specify and referred the matter to custody.

On September 30, 2014, Defendant Sekula held a disciplinary hearing on the first RVR. Plaintiff explained to Sekula that Torres failed to provide an accommodation for his work assignment, and Sekula postponed the hearing until October 12, 2014, for further review.[2]  On October 12, 2014, Sekula re-convened the hearing, and found Plaintiff guilty because he had withdrawn his original re-assignment request.  Sekula, protecting Torres, ignored Plaintiff's claim and ordered Plaintiff back to work, despite full knowledge of his disability and the pain Torres caused him.

On October 8, 2014, Plaintiff submitted a CDCR Form 22 Request for Interview to CCI Hernandez so that he could determine what specific duties Plaintiff could not perform.  Hernandez referred Plaintiff to the medical staff, while the medical staff referred him to custody.  On October 12, 2014, Plaintiff learned about the CDCR Form 1824 Reasonable Accommodation process.  Plaintiff immediately filed a reasonable accommodation request, setting forth his disabilities and requested removal from his dining hall assignment.

---

[2] On October 5, 2014, Plaintiff was also found guilty of the second RVR for refusal to report for his work assignment.

6

On October 22, 2014, Sekula held a hearing on Plaintiff's staff complaint against Torres. During the hearing, Sekula "minimized C/O M. Torres' fraudulency" and referred to Torres' actions as "a 'minor infraction' from which did not warrant administrative reprimand." Upon Plaintiff's information and belief, it was apparent Sekula was shielding her staff from any wrongdoing.

On October 25, 2014, CDCR removed Plaintiff from his kitchen assignment as a result of the CDCR Form 1824 request he filed. On October 29, 2014, the Reasonable Accommodation Panel (RAP) approved Plaintiff's disability request. In short, the panel, consisting of the necessary staff to properly examine the issue, determined that the Plaintiff was physically unfit to perform job duties within the SATF E-Facility dining hall and kitchen.

In November 2014, in a Classification Committee hearing, the committee found that because Plaintiff was found guilty of two serious RVRs for his refusals to report to work, he lost his new job as a building clerk. Instead the Committee confined him to his cell for 23 hours a day, stripped him of his privileges, and was adversely transferred to Salinas Valley State Prison (SVSP).

## C.    Screening of Complaint

As an initial matter, Plaintiff's complaint was screened on November 25, 2015 and the Court found that Plaintiff stated a cognizable claim against Defendants M. Torres and C. Sekula for violation of Plaintiff's right to physical safety under the Eighth Amendment of the United States Constitution. 28 U.S.C. § 1915A; Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) ("Dismissal for failure to state a claim under § 1915A 'incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).'") (quoting Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012) (section 1915(e)(2)(B)(ii) screening standard is the same as Rule 12(b)(6) standard). Defendants fail to acknowledge the Court's screening order and present no arguments which persuade the Court it erred in determining that Plaintiff stated a cognizable claim or any other grounds justifying relief from the screening order exist. See Ingle v. Circuit City, 408 F.3d 592, 594 (9th Cir. 2005) ("A district court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would

7

otherwise result.").  As explained below, Plaintiff's allegations are sufficient to allow him to proceed past the pleading stage.[3]

### D.      Eighth Amendment Cruel and Unusual Punishment

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety," Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir.1986), and may not deny inmates "the minimal civilized measure of life's necessities." Hudson v. McMillian, 503 U.S. 1, 20 (1992). Nonetheless, conditions of confinement may be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prison official violates the Eighth Amendment when two requirements are met: (1) objectively, the official's act or omission must deny the inmate "the minimal civilized measure of life's necessities;" and (2) prison officials subjectively acted with deliberate indifference to his health and safety.  Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir.1996) (citing Wilson v. Seiter, 501 U.S. 294, 303–303 (1991)); Rhodes, 452 U.S. at 347.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See Farmer, 511 U.S. at 834.).

In the prison work context, the Eighth Amendment is violated "when a prisoner employee alleges that a prison official *compelled* him to 'perform physical labor which was beyond his strength, endangered his life or health, or caused undue pain.'" Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.2006) (quoting Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994)) (emphasis added).

### 1.     Defendant Torres

Defendant Torres concedes that an inmate's disability is sufficiently serious for the purpose of satisfying the objective prong of deliberate indifference inquiry.  However, Plaintiff fails to allege

---

[3] Defense counsel is advised to exercise caution in filing future motions to dismiss after the Court has screened the complaint and found a cognizable claim without elaboration as to why or how the Court's screening order is incorrect.

sufficient facts that he (Torres) had a "sufficiently culpable state of mind," and he (Torres) did not have authority to change Plaintiff's work assignment.

Defendant Torres initially argues that he suggested that Plaintiff use his left arm to scoop portions of the food onto the trays as a modification to accommodate the injury to his right arm. When Plaintiff continued to complaint, Torres informed him that, as a correctional officer, he lacked the authority to authorize any re-assignment of Plaintiff's job duties. Defendant then argues that Plaintiff, himself, admitted he had the ability to ask for a comprehensive accommodation from CDCR, but did not avail himself of such procedure until October 12, 2014, approximately six months after he was assigned to kitchen duty. Plaintiff's reasonable accommodation Form CDCR 1824 was approved thirteen days later on October 25, 2014.

In opposition, Plaintiff argues that Torres retained authority to modify and all of Plaintiff's job assignment duties, and Torres was counseled to make such accommodations but simply failed to do so. Indeed, Torres was specifically instructed by CCII Fisher that if modifications to accommodate Plaintiff's injury could not be made, he (Torres) had the duty to refer Plaintiff to classification for reassignment, but Torres failed to do so.

In reply, Defendant Torres continues to argue that he offered Plaintiff a reasonable accommodation.

As an initial matter, Plaintiff is entitled to have his factual allegations taken as true and construed in the light most favorable to him, and he is entitled to be afforded the benefit of any doubt. Nordstrom, 762 F.3d at 908; Blaisdell, 729 F.3d at 1241. Defendant's arguments are premised on a misrepresentation of the allegations presented in the entire complaint and merely point to portions of Plaintiff's allegations in isolation. The Court finds that Plaintiff states a cognizable claim against Defendant Torres. Accepting Plaintiff's factual allegations as true and construing them in the light most favorable to him, he has shown that Torres *compelled* him to 'perform physical labor which was beyond his strength, endangered his life or health, or caused undue pain.'" Morgan v. Morgensen, 465 F.3d at 1045. According to the allegations in the complaint, Plaintiff informed Torres on several occasions that he was unable to perform the job duties in the dining room because it was causing him pain, yet Torres failed to accommodate or reassign him to a different position. Furthermore, even after

Torres was advised by another official to issue a CDCR 128B-1 chrono if he could not accommodate Plaintiff, Torres failed to do so and continued to instruct the Plaintiff to perform the same painful job duties as previously described.  Plaintiff was compelled by Torres to work in conditions that caused him extreme pain for several months.  The fact Plaintiff ultimately requested accommodations which were acknowledged arguably lends credit to his claim that he could not perform the job duties in the dining hall and kitchen.

At this stage of the proceedings, Plaintiff's claims need only be plausible, not "likely to succeed" or "probable."  The Court finds Plaintiff's allegations are sufficient to meet the subjective prong of Plaintiff's Eighth Amendment claim and are not negated by the fact that Torres told Plaintiff to use his left arm or that Plaintiff simply failed to submit paperwork to receive an accommodation. Whether Plaintiff will actually be able to prove the required mental stage he alleges is a question that can be answered only after discovery Plaintiff has alleged enough to get past the pleading stage, and Defendant Torres's motion to dismiss should be denied.

    2.    Defendant Sekula

Defendant Sekula argues that Plaintiff cannot seek liability based on a claim of supervisory liability because liability as a supervisor rests on a find that "[she] implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  (Mot. at 8:21-22.)

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934.  Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

Contrary to Defendant's argument, Plaintiff is not proceeding on a supervisory liability claim against Sekula.  Rather, Plaintiff's allegations support a reasonable inference that Sekula knew of the violation by Torres and failed to act to prevent it when on October 12, 2015, Sekula ordered Plaintiff to continue to work in the conditions under which he complained caused his excruciating pain.  Thus,

1  the Court rejects Defendant Sekula's argument that Plaintiff's complaint fails to state a cognizable

2  claim her.

3          "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of

4  life, liberty, or property; and those who seek to invoke its procedural protection must establish that one

5  of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  While Defendants are

6  correct insofar as Plaintiff does not have a protected liberty interest in the processing his appeals, and

7  therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution

8  of his appeals.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855

9  F.2d 639, 640 (9th Cir. 1988)).  Defendant's response to Plaintiff's inmate appeal is not wholly

10  irrelevant, however, when Plaintiff is not claiming a due process violation, and such appeal response

11  may be the basis for liability.

12          On September 30, 2014, Defendant Sekula held a disciplinary hearing on the first RVR.

13  Plaintiff explained to Sekula that Torres failed to provide an accommodation for his work assignment,

14  and Sekula postponed the hearing until October 12, 2014, for further review.[4]  On October 12, 2014,

15  Sekula re-convened the hearing, and found Plaintiff guilty because he had withdrawn his original re-

16  assignment request.  Sekula, protecting Torres, ignored Plaintiff's claim and ordered Plaintiff back to

17  work, despite full knowledge of his disability and the pain Torres caused him.

18          On October 22, 2014, Sekula held a hearing on Plaintiff's staff complaint against Torres for

19  allegedly forcing him to sign a falsified state document.  During the hearing, Plaintiff alleges that

20  Sekula referred to Torres' actions as "minor infractions" and stated that Torres would not be

21  reprimanded.  Plaintiff contends that Sekula acted to shield Torres "from wrongdoing" for allegedly

22  forcing Plaintiff to sign a back-dated state document.

23          At the time of Plaintiff's disciplinary hearing and filing of inmate appeal, Plaintiff was still

24  requesting a different job assignment, which could have been granted by Sekula but was not.  The fact

25  that inmates do not have any interests at stake with respect to the appeals process so as to invoke the

26  protection of the Due Process Clause does not shield staff from liability if their actions in reviewing an

27

28  [4] On October 5, 2014, Plaintiff was also found guilty of the second RVR for refusal to report for his work assignment.

appeal are otherwise sufficient to support a claim that they were placed on notice as to the existence of a constitutional violation and failed to act to prevent it.  Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012); Starr v. Baca, 652 F.3d 1202, 1205-1208 (9th Cir. 2011).  Accordingly, there are sufficient allegations, at the pleading stage, to state a cognizable claim against Defendant Sekula.

### E. Qualified Immunity

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted).  Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993.  While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances.  Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

Defendants concede that Plaintiff has a general constitutional right to personal safety as an inmate in state custody, and therefore for purposes of qualified immunity analysis, Plaintiff satisfies the second prong of the Saucier test.  (Mot. at 12.)  As set forth above, Plaintiff alleges a cognizable deliberate indifference claim against Defendants Torres and Sekula under "clearly established" law.  Accepting Plaintiff's factual allegations as true, as this Court must, Defendants Torres and Sekula violated Plaintiff's right to personal safety under the Eighth Amendment.  The Court concludes that a

12

reasonable officer in Defendants' positions could not have believed that their actions were lawful. Accordingly, Defendants' motion to dismiss based on qualified immunity should be denied.

### F.      Favorable Terminate Rule

It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief.  Wilkinson v. Dotson, 544 U.S. 74, 78 (2005).  Often referred to as the favorable termination rule or the Heck bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody."  Wilkinson, 544 U.S. at 81; Heck v. Humphrey, 512 U.S. 477, 482, 486-487 (1994); Edwards v. Balisok, 520 U.S. 641, 644 (1997).  Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  Id. at 81-82.

Defendants argue that to the extent Plaintiff is challenging the validity of the two RVRs issued by Torres for Plaintiff's failure to perform at his position and for his failure to report to duty, such claim is barred by the holding in Heck.

As an initial matter, Plaintiff is not challenging the findings of the RVRs.  Furthermore, there is an insufficient showing that Plaintiff's claims are barred by Heck as success on his claims would not necessarily spell speedier release and therefore his § 1983 claims against Torres and Sekula are not barred by Heck.  Defendants have failed to demonstrate how the loss of credits resulting from the disciplinary conviction will have any impact on the length of Plaintiff's confinement.[5]  Ramirez, 334 F.3d at 858 ("[W]here … a successful § 1983 action would not necessarily result in an earlier release from incarceration … the favorable termination rule of Heck and Edwards does not apply.")

///

---

[5] This finding does not foreclose Defendants from rearguing this claim by way of motion for summary judgment with supporting evidence.

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion to dismiss the complaint be DENIED in its entirety.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 22, 2016**

UNITED STATES MAGISTRATE JUDGE

14